UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.

MEGAN JAMIL,

          Defendant.

Case: 2:22−cr−20571
Assigned To : Murphy, Stephen J., III
Referral Judge: Altman, Kimberly G.
Assign. Date : 10/31/2022
Description: INFO USA V. SEALED MATTER (NA)

VIO: 18 U.S.C. § 1349

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### General Allegations

At all times relevant to this Information:

### The Medicare Program

1.     The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or over or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.      Medicare covered different types of benefits and was separated into different program "parts."  Medicare "Part A" covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound.

4.      National Government Services was the CMS intermediary for Medicare Part A in the state of Michigan starting in or around May 2015.  AdvanceMed (now known as "CoventBridge") was the Zone Program Integrity Contractor ("ZPIC"), meaning the Medicare contractor charged with investigating fraud, waste, and abuse.

5.      By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement, and furthermore, certified that they would not knowingly present, or cause to be presented, false and fraudulent claims.  In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all of the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

2

6. Upon certification, the provider, whether a clinic, a HHA, or an individual, was assigned a provider identification number for Medicare billing purposes (referred to as a "National Provider Identifier" or "NPI"). When the provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor or carrier that included the NPI assigned to that provider.

7. In order to receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92) containing the required information appropriately identifying the provider, beneficiary, and services rendered.

8. Providers were given, and provided with online access to, Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers could only submit claims to Medicare for services they rendered, and providers were required to maintain patient records to verify that the services were provided as described on the claim form. These records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the provider.

9. Medicare only covered services that were not procured through the payment of kickbacks and bribes, medically reasonable and necessary, eligible for reimbursement, and provided as represented.

3

10. Medicare only covered home health services, if, on the claimed dates of service:

a. the Medicare beneficiary was under the care of a doctor and receiving services under a plan of care established and reviewed regularly by a doctor;

b. the Medicare beneficiary needed, and a doctor certified that the beneficiary needed, one or more of the following: (i) Intermittent skilled nursing care; (ii) Physical therapy; (iii) Speech-language pathology services; or (iv) Continued occupational therapy;

c. the HHA must have been approved by Medicare (Medicare-certified); and

d. the Medicare beneficiary was homebound, and a doctor certified that the Medicare beneficiary was homebound.

**Federal Anti-Kickback Statute Compliance**

11. As a requirement to enroll as a Medicare provider, Medicare required providers to agree to abide by Medicare laws, regulations, and program instructions. Medicare further required providers to certify that they understood that a payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with these laws, regulations, and program instructions,

4

including the Federal Anti-Kickback Statute.  Accordingly, Medicare would not pay claims procured through kickbacks and bribes.

## The Relevant Home Health Agencies

12.    Trillium Home Care Solutions, LLC ("Trillium") was a Michigan company doing business at 30600 Telegraph Road, Suite 1388, Bingham Farms, Michigan 48025.  Trillium was enrolled as a participating Medicare provider and submitted claims to Medicare.  Trillium was a HHA that purportedly provided in-home physical therapy and skilled nursing services to patients, including Medicare beneficiaries.

13.    Divined Home Health Care, Inc., was a Michigan company doing business at 30800 Telegraph Road, Suite 2820, Bingham Farms, Michigan 48025. Divined was enrolled as a participating Medicare provider and submitted claims to Medicare. Divined was a HHA that purportedly provided in-home physical therapy and skilled nursing services to patients, including Medicare beneficiaries.

## The Defendant and Other Individuals

14.    Defendant MEGAN JAMIL, a resident of Oakland County, Michigan, purported to be the owner of Trillium, from on or about June 1, 2016, through in or around November 2018, and was an employee of Divined, from in or around September 2016, through in or around September 2019.

5

15.     Individual 1, a resident of Oakland County, Michigan, was the owner, controller, and operator of Trillium and Divined.

## COUNT 1
## 18 U.S.C. § 1349
### (Health Care Fraud Conspiracy)

16.     Paragraphs 1 through 15 of this Information are re-alleged and incorporated by reference as though fully set forth herein.

17.     Beginning in or around June 2016, and continuing through in or around September 2019, in Oakland County, in the Eastern District of Michigan, and elsewhere, MEGAN JAMIL did knowingly and willfully combine, conspire, confederate, and agree with Individual 1, and others known and unknown to the United States, to execute a scheme and artifice to defraud Medicare, a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, 1347.

### Purpose of the Conspiracy

18.     It was a purpose of the conspiracy for MEGAN JAMIL, Individual 1, and their co-conspirators to unlawfully enrich themselves by, among other things:

6

(a) submitting or causing the submission of false and fraudulent claims to Medicare for claims based on kickbacks and bribes; (b) submitting or causing the submission false and fraudulent claims to Medicare for services that were (i) medically unnecessary; (ii) not eligible for Medicare reimbursement; and/or (iii) not provided as represented; (c) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendant and her co-conspirators, and to further the fraud.

### Manner and Means

The manner and means by which the defendant and her co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

19.    In or around June 2016, MEGAN JAMIL, Individual 1, and others submitted or caused the submission of false and fraudulent corporate filings to the State of Michigan purporting that MEGAN JAMIL was the owner of Trillium, despite exercising no ownership authority over Trillium, which continued to be owned, controlled, and operated by Individual 1.

20.    In or around June 2016, MEGAN JAMIL, Individual 1, and others submitted false and fraudulent enrollment documents to Medicare in which MEGAN JAMIL falsely represented that she owned and/or controlled Trillium and failed to disclose Individual 1's role in owning, controlling, and operating Trillium.

7

21.     Between in or around June 2016, and in or around November 2018, MEGAN JAMIL, at the direction of and in agreement with Individual 1, purported to be the owner of Trillium, and concealed and disguised Individual 1's role, when in fact Individual 1 at all times owned, controlled, and operated Trillium.

22.     Between in or around June 2016, and in or around September 2019, MEGAN JAMIL, Individual 1, and others paid and caused the payment of illegal kickbacks and bribes to patient recruiters in exchange for the referral of beneficiaries to Trillium and Divined.

23.     Between in or around June 2016 and in or around September 2019, MEGAN JAMIL, Individual 1, and others submitted and caused the submission of false and fraudulent claims to Medicare, by and through Trillium and Divined, in an approximate amount of at least $4,975,955.55, for services that were obtained through illegal kickbacks and bribes, medically unnecessary, ineligible for Medicare reimbursement, and/or not provided as represented.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461; 18 U.S.C. § 982(a)(7))

24.     The above allegations contained in this Information are hereby incorporated by reference as if fully set forth herein for the purpose of alleging forfeiture against the defendant, MEGAN JAMIL, pursuant to Title 18, United States

8

Code, Sections 981(a)(1)(C) and 982(a)(7); and Title 28, United States Code, Section 2461.

25.     Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), together with Title 28, United States Code, Section 2461, as a result of the foregoing violation as charged in Count 1 of this Information, the defendant, MEGAN JAMIL, shall forfeit to the United States: any property, real or personal (a) which constitutes or is derived from proceeds traceable to the commission of the offense, and (b) that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

26.     Such property includes, but is not limited to, a forfeiture money judgment, in an amount to be proved in this matter, representing the total amount of proceeds and/or gross proceeds obtained as a result of the defendant's violation as charged in Count 1 of this Information.

27.     Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, MEGAN JAMIL, shall forfeit substitute property, up to the value of the properties described above or identified in any subsequent forfeiture bills of particular, if, by any act or omission of the defendant, the property cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially

9

diminished in value; or has been commingled with other property that cannot be

subdivided without difficulty.


DAWN N. ISON
UNITED STATES ATTORNEY

GLENN S. LEON
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

REGINA R. MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan


s/Shankar Ramamuthy
SHANKAR RAMAMURTHY
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (202) 924-5368
Email: shankar.ramamurthy@usdoj.gov

Dated: October 31, 2022

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number<br>2:22−cr−20571 |
| --- | --- | --- |

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | **Companion Case Number:** |
| --- | --- |
| This may be a companion case based upon **LCrR 57.10 (b)(4)[1]**: | **Judge Assigned:** |
| ☐ Yes      ☒ No | **AUSA's Initials:** |

**Case Title:** USA v. Megan Jamil

**County where offense occurred :** Oakland and Wayne

**Check One:**      ☒ Felony            ☐ Misdemeanor            ☐ Petty

_____Indictment/__✓__Information --- **no** prior complaint.
_____Indictment/_____Information --- based upon prior complaint [**Case number:** ]
_____Indictment/_____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____      **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
| --- | --- | --- |
| | | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

October 31, 2022
_____
Date

Shankar Ramamurthy
_____
Trial Attorney
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 202-924-5368
Fax:
E-Mail address: shankar.ramamurthy@usdoj.gov
Attorney Bar #: IL 6306790

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.